IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK ZGRABLICH | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 15-4665 |
| CARDONE INDUSTRIES, INC. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                      **FEBRUARY  3 , 2016**

      Plaintiff Frank Zgrablich was terminated by his employer, Defendant Cardone Industries, Inc. ("Cardone Industries"), after serving as a corporate executive for more than seven years. Cardone Industries refused to provide certain severance benefits to Zgrablich following his termination.  In an attempt to recover the unpaid benefits, Zgrablich sued Cardone Industries in the Court of Common Pleas of Bucks County, Pennsylvania.  Cardone Industries removed the matter to this Court.  (ECF No. 1.)  In its Notice of Removal, Cardone Industries alleges that Zgrablich's state law claims, which are based on an employment agreement entered into with Cardone Industries, are completely preempted by the Employment Retirement Income Security Act of 1974 ("ERISA").  Presently before the Court is Plaintiff's Motion to Remand.  (ECF No. 6.)  Plaintiff contends that this is not a case governed by ERISA and that this Court lacks subject matter jurisdiction.  For the following reasons, Plaintiff's Motion to Remand will be denied.

**I.      BACKGROUND**

    **A.      Factual Background**

The following facts are taken from Plaintiff's Amended Complaint and the Employment Agreement between Zgrablich and Cardone Industries that is attached thereto.[1]

Frank Zgrablich was Cardone Industries' global human resources leader until the company promoted him to Executive Vice President of Latin America Operations in August of 2007. (Am. Compl. ¶ 30; Emp't Agrm't, Ex. A., ECF No. 5); Zgrablich accepted the promotion after Cardone Industries decided to move many of its operations from Philadelphia, Pennsylvania to Mexico. (Am. Compl. ¶¶ 29-30.) As Cardone Industries' Executive Vice President of Latin America Operations, Zgrablich was required to live near the Texas-Mexico border so that he could oversee Cardone Industries' business in Mexico and its expansion into Latin America. (*Id*. ¶ 30.) Zgrablich and Cardone Industries memorialized the terms of Plaintiff's new role in an Employment Agreement (the "Agreement") that was signed by both parties on August 30, 2007. (Emp't Agrm't.)

The Agreement contains several provisions that detail the parties' arrangement regarding Plaintiff's severance entitlements. (*Id*. at 2.) These provisions entitle Plaintiff to different benefits depending upon whether Plaintiff was terminated "for cause," "without cause," "upon death," "upon disability," etc. (*Id*.) The Agreement contemplates many more benefits for without cause termination than it does for termination justified by cause. (*Id*. at 4.) For example, under the Agreement, Zgrablich could collect the "continuation of the Executive's then

---

[1] In "[r]uling on whether an action should be remanded to the state court from which it was removed, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed. In so ruling the district court must assume as true all factual allegations of the complaint. . . ." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (internal citation omitted).

annual salary for the five-year period" following without cause termination. (*Id*.) No such benefit would be available to Zgrablich in the event of for cause termination. (*Id*.)

Cardone Industries terminated Zgrablich on November 17, 2014. (Am. Compl. ¶ 34.) Zgrablich alleges that Cardone Industries fired him without cause, and that the Company therefore owes him the benefits detailed in the Agreement's "Termination By the Company Without Cause" provision. (*Id*. ¶ 14.) Specifically, Zgrablich argues that the Agreement establishes Cardone Industries' contractual obligation to pay him $1,575,000, which is five times the base annual salary that Zgrablich collected at the time of his termination. (*Id*.) Cardone Industries has refused to pay Zgrablich any such benefits. (*Id*. ¶ 12.) Plaintiff asserts two additional grounds for relief. In Count II of his Amended Complaint, Zgrablich alleges that Defendant's refusal to confer the benefits contemplated in the Employment Agreement constitutes a violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 2601.1, *et seq*. (*Id*. ¶¶ 22-27.) Plaintiff also seeks damages based on his alleged reliance on promises made to him by Defendant related to his move to Texas. (*Id.* ¶¶ 28-35.)

B.     **Procedural Background**

On July 5, 2015, Zgrablich filed this lawsuit in the Court of Common Pleas of Bucks County.  *See* Compl. *Zgrablich v. Cardone Industries, Inc.*, No. 2015-0491 (Pa. Commw. Ct. Jul. 5, 2015).  Zgrablich's Complaint alleges three causes of action:  breach of contract, violation of the Pennsylvania Wage Payment and Collection Law, and promissory estoppel. *Id*. On August 17, 2015, Cardone Industries removed the case to this Court, asserting that this Court has federal question jurisdiction under 28 U.S.C. § 1331. (Notice of Removal.) Specifically, the company contends this Court has jurisdiction over Zgrablich's breach of contract claim since it is exclusively governed by ERISA. (*Id*. ¶ 16.) Cardone Industries' Notice of Removal asks this

3

Court to exercise supplemental jurisdiction pursuant 28 U.S.C. § 1367 over any claims that are not solely governed by ERISA.  (*Id.* ¶ 20.)  Zgrablich now seeks remand of this action, contending that this Court does not have jurisdiction over this lawsuit for two reasons:  (1) his state law claims are not preempted by ERISA, and (2) the parties have agreed to have their contractual disputes resolved exclusively under the laws of Pennsylvania.  (Mot. to Remand ¶ 5-6, ECF No. 6.)

## II.     LEGAL STANDARD

Removal of an action from state court is proper in "any civil action . . . of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  A case removed from state court shall, however, be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c); *see also Tellado v. Roto-Die, Inc.*, No. 04-3382, 2005 WL 724094, at *1 (E.D. Pa. Mar. 29, 2005).

Jurisdiction in a federal district court may be based upon:  (1) a federal question under 28 U.S.C. § 1331; or (2) diversity under 28 U.S.C. § 1332.  The federal question jurisdiction provision states:  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In this case, the parties disagree about whether this action arises under ERISA—a federal statute.  Therefore, the question before the Court is one of jurisdiction rather than a decision on the merits of the case.  *Ingemi v. Pelino & Lentz, P.C.*, 866 F. Supp. 156, 160 (D.N.J. 1994).

In resolving the parties' dispute, we must assume that all of the fact-based allegations in the Complaint are true.  *Steel Valley Auth.*, 809 F.2d at 1010 (citing *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205(5th Cir. 1983).  The defendant as the removing party bears the burden of proving to a legal certainty that federal subject matter jurisdiction exists.  *Samuel-Bassett v.*

*Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).  Because the removal statutes are strictly construed against removal, *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), all doubts must be resolved in favor of remand.  *Samuel-Bassett*, 357 F.3d at 403.

### III.   DISCUSSION

#### A.   Complete Preemption of State Law Claims Under ERISA

Plaintiff argues that this matter should be remanded to the Court of Common Pleas because the Complaint does not present a federal question that would support removal.  (Mot. to Remand ¶¶ 18-20.)  Defendant contends that § 502(a) of ERISA requires that this Court hear the issues raised in the Zgrablich Complaint.  (Notice of Removal ¶ 18.)  Specifically, the company argues that § 502(a) completely preempts Plaintiff's claims.  (*Id*. ¶ 18.)

A federal court generally does not have jurisdiction over a case unless it presents a question based on federal law.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The exception to this is cases based on diversity jurisdiction.  *Id*. ("Absent diversity of citizenship, federal-question jurisdiction is required.").  A cause of action ordinarily arises under federal law only where the plaintiff's well-pleaded complaint raises issues of federal law.  *Id*.; *see also In re U.S. Healthcare*., 193 F.3d 151, 160 (3d Cir. 1999).  It follows that a civil action filed in state court is removable to federal court if the claim is one "arising under," *inter alia*, the laws of the United States.  28 U.S.C. §§ 1331, 1441(a).  On its face, Plaintiff's Complaint does not present a federal question.  Rather, the Complaint asserts, *inter alia*, a state common law claim for breach of contract.  Defendant argues that, as an action preempted by ERISA, Plaintiff's suit is unaffected by the well-pleaded complaint rule and is governed by federal law.

"Federal pre-emption is ordinarily a federal defense to [a] plaintiff's suit."  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  A defense that raises a federal question is usually

inadequate to invoke federal question jurisdiction because courts generally look only to the complaint to search for federal question jurisdiction. *See Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *Caterpillar*, 482 U.S. at 392. "As a defense, [preemption] does not appear on the face of a well-pleaded complaint, and, therefore does not authorize removal to federal court." *Metro Life Ins. Co.*, 481 U.S. at 63. This general rule seems fatal to Defendant's attempt to remove this action on the basis that ERISA pre-emption establishes federal question jurisdiction over Plaintiff's state law claims. However, an exception to the well-pleaded complaint rule exists when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 392 (citing *Metro. Life Ins. Co.*, 481 U.S. at 67). Section 502 of ERISA has such preemptive force. *See Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399-400 (3d Cir. 2004). State law causes of action that are "within the scope of the civil enforcement provisions of § 502(a) are removable to federal court." *Davila*, 542 U.S. at 209 (citation and internal quotations marks omitted).

There are two variants of ERISA preemption: complete preemption under § 502(a), *see* 29 U.S.C. § 1132(a), and express preemption under § 514(a), *see* 29 U.S.C. § 1144(a). The Third Circuit has clarified the differences. *See In re U.S. Healthcare*, 193 F.3d at 160-61. Complete preemption is a jurisdictional concept. It "operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint." *Id*. at 160. State law claims subject to complete preemption are "necessarily federal in character" and, as such, are transformed into federal claims. *Id*. (citing *Metro. Life Ins. Co.*, 481 U.S. at 63). Express preemption on the other hand is a "substantive concept governing the

applicable law." *Id*. It concerns state laws that "relate to" employee benefit plans. *Id*. "Unlike the scope of § 502(a), which . . . creates a basis for removal to federal court, § 514(a) merely "governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court." *Lazorko v. Pa. Hosp.*, 237 F.3d 242, 248 (3d Cir. 2000). We must therefore determine whether Plaintiff's state law claims are preempted by § 502(a).

ERISA governs the rights of participants in employee benefit plans. The issues raised in Plaintiff's Complaint are precisely the kind that ERISA permits to be resolved in a federal forum. The Supreme Court of the United States in *Davila* noted that "Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans . . .' and to 'provid[e] . . . ready access to the Federal courts.'" *Davila*, 542 U.S. at 208 (citing 29 U.S.C. § 1001(b)). "To this end, ERISA includes expansive pre-emption provisions which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.* (citation and internal quotation marks omitted). "[I]f an individual at some point in time could have brought his claim under ERISA § 502(a)(1)(B) and . . . there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA . . . ." *Davila*, 542 U.S. at 210; *see also Pascack Valley Hosp.*, 388 F.3d at 400.

Section 502(a)(1)(B) of ERISA, establishes a cause of action under ERISA, by providing, in relevant part, that:

> [a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).  In order to bring an action under § 502(a)(1)(B), the litigant must be a participant or beneficiary of the plan and the action must be brought to enforce the participant's rights due under the plan.

> *1.  Whether the Severance Agreement is an ERISA Plan*

Whether the civil enforcement mechanisms of § 502(a)(1)(B) preempt Plaintiff's claims will depend on whether the Employment Agreement between Plaintiff and Defendant is a plan governed by ERISA.

There are two types of employee benefit plans under ERISA:  (1) "welfare benefit" plans, which provide medical benefits and any benefits "other than pensions on retirement or death;" and (2) employee "pension benefit" plans, which "provide[] retirement income" or "results in a deferral of income [until retirement]."  29 U.S.C. § 1002(1)-(2); *see also Koenig v. Automatic Data Processing*, 156 F. App'x 461, 466 (3d Cir. 2005).  Defendant argues that the severance portion of the Agreement is an employee pension benefit plan as defined by § 1002(2).  (Notice of Removal ¶ 16).

"[A] comparison of the statutory definitions of a welfare plan and a pension plan reveals that the only significant difference between these varieties of employee benefit[] plans is the nature of the benefit furnished—a pension plan provides retirement income or other deferred income, while a welfare plan provides benefits upon the occurrence of various specified contingencies."  *Colarusso v. Transcapital Fiscal Sys., Inc.*, 227 F. Supp. 2d 243, 251 (D.N.J. 2002).  Plaintiff argues that Defendant never established or maintained an ERISA plan of any type.

ERISA does not define the term "plan."  However, the Third Circuit has observed that "[a]n employer can establish an ERISA plan rather easily."  *Gruber v. Hubbard Bert Karle*

*Weber, Inc.*, 159 F.3d 780, 789 (3d Cir. 1998) (citation omitted). In deciding whether the Employment Agreement's severance provisions constitute an ERISA plan, we must determine whether "'from the surrounding circumstances a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Shaver v. Siemens Corp.*, 670 F.3d 462, 475 (3d Cir. 2012) (quoting *Donovan v. C.H. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)). The parties here have provided a written agreement that satisfies all the requirements of an ERISA plan.[2]

The "Severance" provisions included in the Agreement provide a comprehensive description of the plan benefits available to Plaintiff at termination. (Emp't Agm't 2-6.) The provisions set forth in a clear fashion the precise benefits that are available, who is entitled to those benefits, the requirements to receive such benefits, and the limits on claims to the benefits contemplated by the Agreement. (*Id.*) This information is clearly ascertainable by reading the document. Any executive who received a copy of this Agreement could easily ascertain not only the benefits offered under the plan, but also the intended beneficiaries under the plan. The source of funding is clearly the employer, Cardone Industries, which has established the Agreement to provide the enumerated benefits to the Plaintiff and his beneficiaries. (*Id.*) In addition, the Agreement specifically lists the company as having coexisting obligations. (*Id.*) The final requirement for establishing the existence of an ERISA plan is also met. The severance provisions describe when and how benefits are to be distributed to Plaintiff or his

---

[2] In determining whether a plaintiff has artfully pled his suit so as to couch a federal claim in terms of state law, the Court is permitted to look beyond the face of the complaint. *Pascack*, 388 F.3d at 400 (citing *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 268, 274 (3d Cir. 2001)); s*ee also Davila*, 542 U.S. at 211 (noting that to determine whether a cause of action falls within the scope of § 502(a)(1)(B), courts must examine the complaint, the statute on which the state law claims are based, and the various plan documents).

beneficiaries. (*Id.*) A reasonable person could easily ascertain all information required to establish a plan directly from the Agreement.

Our analysis does not end here, however, because "severance benefits do not implicate ERISA unless they require the establishment and maintenance of a separate and ongoing administrative scheme." *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1538 (3d Cir. 1992); *see also Menkes v. Prudential Ins. Co. of Am.,* 762 F.3d 285, 290-91 (3d Cir. 2014). The Supreme Court discussed this requirement in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987). In *Fort Halifax*, the Court held that a state statute requiring employers to make a one-time, lump-sum severance payment to terminated employees did not implicate ERISA. *Id.* at 12. The Court stated that "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation . . . . To do little more than write a check hardly constitutes the operation of a benefit plan." *Id*. The critical question is whether "the employer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the [policy's] criteria." *Menkes*, 762 F.3d at 291 (alteration in original) (citation omitted); *see also Coggins v. Keystone Foods, LLC*, No. 15-480, 2015 WL 3400938, at *6 (E.D. Pa. May 27, 2015); *Middleton v. Phila. Elec. Co.*, 850 F. Supp. 348, 352 (E.D. Pa. 1994).

The Third Circuit has had several opportunities to apply *Fort Halifax*. The analyses of the Third Circuit have focused on the amount of employer discretion involved in determining an employee's right to benefits. *See, e.g., Angst*, 969 F.2d at 1530; *Pane v. RCA, Corp.,* 868 F.2d 631 (3rd Cir. 1989)*.* A plan is said to require the establishment and maintenance of a separate and ongoing administrative scheme only if the plan administrator must determine an employee's right to collect benefits based on subjective criteria. For example, in *Pane*, the Third Circuit

10

affirmed the district court's ruling that a severance plan set up to retain a select group of company executives was an ERISA plan. 868 F.2d at 635. The trial court relied on the fact that, under the severance plan, the employee was entitled to benefits only if he or she was terminated for reasons other than for cause. Therefore, "the circumstances of each employee's termination [had to] be analyzed in light of [certain] criteria, and an ongoing administrative system constituting an ERISA plan exist[ed]." *Pane v. RCA Corp.*, 667 F. Supp. 168, 171 (D.N.J. 1987), aff'd, 868 F.2d 631 (3d Cir. 1989).

Here, as in *Pane*, Plaintiff's eligibility to collect the severance benefits as set forth in the Agreement turns on whether he was terminated with or without cause—a standard requiring the exercise of judgment on a case-by-case basis. (Emp't Agm't 4.) Standing alone, this fact is strong proof that the plan at issue "involve[s] a separate determination of each individual's eligibility for benefits" and is therefore governed by ERISA. *See Pane*, 667 F. Supp. at 170. In addition to providing benefits that vary based on the reason for termination, the Agreement has language demonstrating the ongoing need for administration of the plan. For example, Cardone Industries is not obligated to provide Plaintiff with medical coverage if "the Executive obtains comparable substitute coverage from another employer." (Emp't Agm't 2-4.) In addition, all severance and medical benefits provided by the Agreement terminate "[i]n the event the Executive breaches any of the restrictions or provisions in the Agreement's Non-Compete; Non-Solicitation clause." (Emp't Agm't 10.) Because eligibility to benefits under the plan turns on the subjective circumstances of Plaintiff's termination and requires an "administrative apparatus that would analyze each employees' situation in light of particular criteria," *Angst*, 969 F.2d at 1539, the law requires a finding that the Agreement created an ERISA benefits plan.

Plaintiff argues that *Pane* is not controlling here. Plaintiff cites *Fort Halifax* and *Angst* and several other out-of-circuit authorities in arguing that the Agreement does not create an ERISA plan. He argues that the severance arrangement at issue here provides only a single payment of an amount that can be determined by a "simple one-time calculation." (Br. in Supp. of Mot. to Remand ¶¶ 5-6, ECF No. 6.) This is simply not the case. The provisions at issue provide for the continuation of Plaintiff's salary and health care coverage for at least five years following a no-cause termination and subject to other criterion mentioned above. In addition, Plaintiff cites Fifth and Ninth Circuit cases, asserting that a "for cause" termination provision is not sufficient to turn a severance agreement into an ERISA plan. (*Id.* ¶ 6.) As previously discussed, the Agreement is unlike the statute at issue in *Fort Halifax* and the plan discussed in *Angst* because it contemplates much more than a uniform one-time, lump-sum severance payment. Instead, the provisions in the Agreement clearly demonstrate the need for an administrative apparatus as required by the Third Circuit. (*See supra* § III.A.1.)

In addition, Plaintiff argues that "an individual one-person employment agreement does not constitute a 'plan' under ERISA." (Br. in Supp. of Mot. to Remand ¶ 6.) We reject this argument. The Agreement itself recognizes that other senior company executives made similar agreements. (*See* Emp't Agm't 2 ("[T]he Executive shall be entitled to participate in all of the Company's employee benefit plans on the same basis as those benefits that are generally made available to other senior executives of the Company. . . .").) Plaintiff's suggestion that an employment agreement does not constitute an ERISA plan if only a single employee is a signee of the agreement is simply wrong. *See e.g., Pane*, 868 F.2d at 633 (recognizing that individual employment and severance agreements between the defendant and company executives may constitute ERISA plans).

The Agreement here is a plan governed by ERISA. We will determine whether Plaintiff's specific causes of action are within the scope of claims that may be brought under § 502(a)(1)(B).

### 2. The Davila Analysis

The Supreme Court's analysis in *Davila* may initially be divided into two inquires. First, the Court must determine whether the Plaintiff is a *participant* or *beneficiary* of an ERISA employee benefit plan. Second, the court must determine whether Plaintiff seeks to recover benefits due to him under the terms of his plan. *See Pascack Valley Hosp.*, 388 F.3d at 400. As discussed above, Defendant here established an ERISA plan. *See supra* § III.A.1. Moreover, Plaintiff is a party that can bring a claim pursuant to § 502(a)(1)(B). A "participant" is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . " *N.J. Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) (citing 29 U.S.C. § 1002(7)). The Agreement explicitly lists Plaintiff as an executive who is entitled to recover under the plan. (Emp't Agm't 1.) Plaintiff is a "participant" of an ERISA plan.

In addition, Plaintiff is seeking benefits due to him under the plan. In analyzing this requirement, courts have distinguished "between claims involving the 'right to payment' and claims involving the 'amount of payment'-that is, on the one hand, claims that implicate coverage and benefits established by the terms of the ERISA benefit plan, and, on the other hand, claims regarding the computation of contract payments or the correct execution of such payments." *Montefiore Med. Ctr. v. Teamsters Local* 272, 642 F.3d 321, 331 (2d Cir. 2011); *see also Pascack Valley Hosp.*, 388 F.3d at 403-04 (finding no ERISA preemption of claims where the dispute was over the amount of payment rather than the right to payment). Only the former

13

may "constitute claims for benefits that can be brought pursuant to § 502(a)(1)(B) . . ." *Montefiore*, 642 F.3d at 331; *see also Pascack Valley Hosp.*, 388 F.3d at 403-04; *Lone Star OB/GYN Assocs v. Aetna Health Inc.*, 579 F.3d 525, 531 n.6 (5th Cir. 2009).  Here, Counts I and II of Plaintiff's Complaint are "right to payment claim[s]."  Indeed, Plaintiff brought this litigation to challenge Cardone Industries' determination that he has no right to payment under the plan.

Moreover, removal is proper only if Defendant's actions have not implicated an independent legal duty.  *Pascack Valley Hosp.*, 388 F.3d at 400.  The inquiry here asks whether Defendant's refusal to provide severance benefits to Plaintiff gives rise to a duty that is separate and apart from Defendant's obligations under the plan.  Plaintiff has not attempted to identify another independent legal duty, and we are aware of none based upon the allegations in Plaintiff's Complaint.

Count I alleges that Defendant's refusal to provide severance benefits to Plaintiff constitutes a breach of the Employment Agreement.  (Am. Compl. ¶¶ 1-21.)   Count II alleges that Defendant retains such compensation in violation of the Pennsylvania Wage Payment and Collection Law.  (*Id*. ¶¶ 22-27.)  Both of these claims are completely preempted since they are completely "within the scope of" ERISA § 502(a)(1)(B).  As a result, this Court has federal question jurisdiction under 28 U.S.C. § 1331, and removal was proper.  Accordingly, Plaintiff's Motion to Remand will be denied.[3]

### B.       Contractual Waiver of ERISA Preemption

Zgrablich also argues that removal is unavailable here because the parties agreed to the exclusive application of Pennsylvania law.  The Employment Agreement states, in relevant part:

---

[3] Defendant has not suggested and we do not hold that Plaintiff's promissory estoppel claim (Count III) requires interpretation of the federally regulated plan.

> This Agreement and all rights, remedies and obligations hereunder . . . shall be governed by the laws of the Commonwealth of Pennsylvania. To the full extent lawful, each of the Company and the Executive hereby consents irrevocably to personal jurisdiction, service and venue in connection with any claim or controversy arising out of this Agreement in the courts of the Commonwealth of Pennsylvania located in Philadelphia County, Pennsylvania and in the federal courts in [the] District of Pennsylvania.

(Emp't Agm't 11.) Plaintiff contends that this choice-of-law provision constitutes a waiver of ERISA preemption and requires that this case be resolved under Pennsylvania law rather than under federal law. (Mot. to Remand ¶ 22.)

Initially, we note that the Agreement's "Governing law; Jurisdiction" provision does not proscribe federal court jurisdiction. (Emp't Agm't 11.) The parties agreed to jurisdiction in both state and federal courts. (*Id.*) The Agreement also provides a choice-of-law provision, which provides that Pennsylvania's substantive law will govern disputes arising out of the Agreement. (*Id.*) Since § 502(a) "'converts an ordinary state common law complaint into one stating a federal claim . . . ,'" we address Plaintiff's contractual waiver argument. *Pascack Valley Hosp.*, 388 F.3d at 399 (citing *Davila*, 542 U.S. at 209).

The Third Circuit has never recognized the right of a party to contractually choose state law as the law governing an ERISA plan. Plaintiff has cited no Third Circuit authority in support of this proposition, and we are aware of none. It is beyond dispute that ERISA presents complete preemption pursuant to the broad and expansive sweep of § 502(a)(1)(B), and that "causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Davila*, 542 U.S. at 209 (alteration in original) (citing *Metro. Life Ins. Co.*, 481 U.S. at 66). The instant case was properly removed based upon complete preemption. Plaintiff's contention that preemption under § 502(a)(1)(B) is subject to contractual waiver despite the provision's "extraordinary pre-emptive power" is novel and unconvincing.

15

*See Metro. Life Ins. Co.*, 481 U.S. at 65-66. Moreover, the cases cited by Plaintiff in support of his claim are easily distinguished.

Precedent in this circuit could not be clearer. Our Court of Appeals has said: "[S]tate law causes of action that are within the scope of . . . § 502(a) are completely pre-empted and therefore removable to federal court," *Pascack*, 388 F.3d at 400, and that "state laws that supplement ERISA's civil enforcement scheme conflict with Congress' intent to make the ERISA remedy exclusive, *Barber v. Unum Life Ins. Co. of Am.,* 383 F.3d 134, 140 (3d Cir. 2004) (internal citation and quotation marks omitted).

Moreover, federal appellate courts that have considered whether parties may contract around ERISA preemption have uniformly held they may not. *See, e.g., Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90, 97 (1st Cir. 2000) ("Although in some circumstances contractual waiver of statutory rights is permissible . . . we find no case holding that parties may contractually waive the right to assert ERISA preemption."); *Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 791 (8th Cir. 1998) ("[P]arties may not contract to choose state law as the governing law of an ERISA-governed benefit plan."); *Morton v. Smith*, 91 F.3d 867, 871 (7th Cir. 1996) (noting that choice-of-law provision does not limit trustees of an ERISA plan to the confines of state law). We reject Plaintiff's contractual waiver argument.

### C. Supplemental Jurisdiction

Under 28 U.S.C. § 1367(a), district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

In order to exercise supplemental jurisdiction over a state law claim, a federal court must first have before it a claim sufficient to confer subject matter jurisdiction. *See United Mine*

*Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  Furthermore, the federal claim and state claim must stem from the same "common nucleus of operative fact;" in other words, they must be such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Id*.

As discussed above, two of the claims for reimbursement brought by Plaintiff are completely preempted by ERISA and therefore give rise to federal subject matter jurisdiction. *See Pryzbowski*, 245 F.3d at 276 (noting where district court has jurisdiction over one claim by virtue of preemption under § 502(a), it has discretion to decide whether to exercise supplemental jurisdiction over claims arising from the same factual predicate or remand to state court). Therefore the question is whether the other state law claim arises from the same common nucleus of operative fact.  *Gibbs*, 383 U.S. at 725.  Here, the parties do not dispute that all of the claims asserted by Plaintiff involve the Cardone Industries' refusal to pay severance benefits to Zgrablich in connection with his tenure as a company executive.  Therefore, this Court has supplemental jurisdiction.

### D. Plaintiff's Costs and Attorney's Fees

Finally, we will deny Plaintiff's request for attorney's fees and costs.  Under 28 U.S.C. § 1447(c), district courts have authority to award plaintiff attorney's fees and costs incurred as a result of removal.  28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). "Awarding attorney's fees and costs is usually limited to situations where nonremovability is obvious or where a defendant did not act in good faith."  *Campbell v. Oxford Elecs., Inc.,* No. 07-541, 2007 WL 2011484, at *11 (E.D. Pa. July 5, 2007).  Defendant has successfully argued in

support of removal and in opposition to remand. Accordingly, there will be no award of fees and costs.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand will be denied.

An appropriate Order follows.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**